Cloud L. Cray v. Commissioner. Arthur P. Nauman v. Commissioner.
Cloud Cray v. Commissioner
Docket Nos. 30856 and 30857.
United States Tax Court
1952 Tax Ct. Memo LEXIS 51; 11 T.C.M. (CCH) 1051; T.C.M. (RIA) 52310; October 28, 1952
*51 Ralph W. Barbier, Esq., for the petitioners, A. J. Friedman, Esq., and Peter K. Nevitt, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income and victory tax as follows: Cray
Nauman
Year
Deficiency
Deficiency
1943
$ 5,292.81 *
$ 520.86 *
1944
27,742.01
21,002.09
1945
65,853.75
40,189.47
1946
19,189.35
1,376.32
The only issue for decision is whether agreements which the petitioners had with members of their families whereby the latter contributed capital to a partnership were effective to make a part of the income of the business taxable to the members of the family rather than to the petitioners. Findings of Fact The petitioners filed their returns for the taxable years with the collector of internal revenue for the District of Michigan. Cloud L. Cray is the husband of Edna M. Cray and Cloud L. Cray, Jr., is their son. Arthur P. Nauman is the husband of Lucie T. Nauman. Cray and Nauman were partners in a brokerage firm in Detroit known as Cray, McFawn & Company in which the interests were Cray 50 per cent, Nauman 30 *52 per cent and McFawn 20 per cent. The partnership, in the course of its business, purchased a distillery in Atchison, Kansas, for $75,000 in September 1941. Operation of the distillery was not the purpose of the firm so the members formed another partnership called Midwest Solvents Company, in which the interests of the partners were the same, to own and operate the business. The Reconstruction Finance Corporation agreed to lend the business $75,000 provided the partners could obtain an equivalent amount. They contributed $35,000, including the $12,750 obtained as indicated below, and obtained $40,000 on second mortgage loans at 5 per cent plus 16 per cent of profits. The new partnership, formed on December 19, 1941, purchased the business for $75,000 and operated it during the taxable years until May 1, 1946, when it was transferred to a newly formed corporation. Cray and Nauman did not have sufficient cash available for their partnership interests so Cray entered into agreements with his wife and son whereby the wife contributed $5,000 of her separate funds and the son contributed $2,500 of his funds and Nauman entered into an agreement with his wife whereby she contributed $5,250 *53 of her separate funds. The agreements, promptly reduced to writing, were identical except for names and amounts. That with Cray's wife was as follows: "THIS AGREEMENT, Made and entered into this 11th day of February, 1942, by and between CLOUD L. CRAY, Party of the First Part, and EDNA M. CRAY, Party of the Second Part. Witnesseth; "Party of the first part has entered into a partnership agreement with Arthur P. Nauman and Joseph J. McFawn, whereunder a general partnership has been formed to be known as Midwest Solvents Company, and which partnership proposes to engage in the manufacture of industrial alcohol at a plant acquired at Atchison, Kansas. The funds for the acquisition of the plant and for the rehabilitation and opening thereof have to date been supplied by advances from Cray, McFawn & Company, a co-partnership. Under the terms of the partnership agreement constituting Midwest Solvents Company, the respective partners thereof must now supply their respective shares of the capital to such partnership, and the party of the first part under the terms thereof is required to pay in as his share of such capital, the sum of $17,500.00. Party of the first part has heretofore *54 requested party of the second part to advance to him the sum of $5,000.00 to be used as a part of his partnership contribution. "NOW, THEREFORE, in consideration of the covenants hereinafter contained, IT IS AGREED: "1. Party of the second part shall forthwith pay to party of the first part the sum of $5,000.00, which sum shall be used by him as a part of the capital to be invested by him in the business venture heretofore described and known as Midwest Solvents Company. "2. Party of the first part shall account and pay to party of the second part twosevenths (2/7ths) of all monies hereafter received by him as distribution of partnership profits and two sevenths (2/7ths) of all distributions and return to party of the first part of partnership capital, such accountings to be made by party of the first part to party of the second part within ten (10) days after receipt of same. "3. In the event that party of the first part shall hereafter either be required to or shall elect to furnish additional capital to Midwest Solvents Company, party of the second part shall have the right to advance two-sevenths (2/7ths) of any such sums to be invested by party of the first part, but in *55 the event that party of the second part shall elect not to advance such proportionate amount of such sums, her proportionate share of the profits and of returns of capital shall be decreased in the proportions that the amounts furnished by her hereunder bear to total capital investments made by party of the first part." The business started to operate in 1942 and shortly thereafter the Federal Government gave it large orders for industrial alcohol and spent more than $600,000 to enlarge the plant. The partners all knew of the family agreements. The Cray agreements were interpreted by the parties thereto as entitling Edna to 2/7ths and the son to 1/7th of Cray's distributive share of the profits after salaries to the partners. The Nauman agreement was interpreted by the parties thereto as entitling Lucie to 1/2 of the profits exclusive of salaries, actually distributed to Nauman. The wives and the son maintained their original proportionate interests in the partnership capital. The Crays later received proportionate interests in a corporation formed to take over the business. $12,750, representing Lucie's capital interest at the termination of the partnership, was paid to her estate. *56 The wives and the son reported their shares of the relatively large partnership income except that Lucie died in January 1946 and thereafter reports were made for her and for her estate. Salaries were paid for personal services rendered and additional earnings, in excess of the 16 per cent paid to the second mortgages, were distributable in proportion to capital contributions. The agreements with the wives and the son were bona fide in all respects. The Commissioner, in determining the deficiencies, erroneously held that the distributive shares of the partnership income, 50 per cent to Cray and 30 per cent to Nauman, were taxable to the petitioners without diminution or deduction for the portions thereof to which the wives and the son were entitled. Opinion MURDOCK, Judge: The facts give no support to the determination and contention of the Commissioner but, on the contrary, show that he erred. The profits of the wives and the son were extremely large in proportion to the capital contributed by them but so were those of the petitioners and of the persons who loaned the $40,000. Services were properly paid for in salaries. The agreements were genuine and not lacking in bona *57 fides. They were carried out. There is no valid reason to disregard them. Decision will be entered under Rule 50. Footnotes
*. Income and victory tax.↩